# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

THE ESTATE OF ELSIE LOUISE ADAIR, et al., )
)
      Plaintiffs, )
) CIVIL ACTION
v. )
) No. 12-1283-KHV
THI OF KANSAS, LLC, )
)
      Defendant. )
_____)

## MEMORANDUM AND ORDER

Carolyn Reimer, individually and as administrator of the Estate of Elsie Louise Adair, brought this action against THI of Kansas, LLC ("THI") in the District Court of Reno County, Kansas. Under Kansas law, plaintiff asserts claims for negligence and wrongful death arising from the death of Elsie Louise Adair. Defendant removed the case to federal court based on diversity jurisdiction. This matter comes before the Court on <u>Defendant THI of Kansas At Golden Plains, LCC's Motion To Stay Proceedings And Compel Arbitration</u> (Doc. #21) filed November 16, 2012. For reasons set forth below, the Court sustains defendant's motion.

## Facts

On June 16, 2010, THI admitted Elsie Adair as a resident of its nursing facility in Hutchinson, Kansas. That same day, Carolyn Reimer, who had power of attorney to act on Adair's behalf, signed an "Admission Agreement" and a "Facility-Resident/Representative Arbitration Agreement" ("the Arbitration Agreement" or "the Agreement"). The Arbitration Agreement provided in relevant part as follows:

> It is the intention of the parties to the Agreement to bind not only themselves, but also their successors, assigns, heirs, personal representatives, guardians or any persons deriving their claims through or on behalf of Resident. . . .

> It is further understood that in the event of any controversy or dispute between the parties . . . arising out of or relating to Facility's Admission Agreement, or breach thereof, or relating to the provisions of care or services to Resident, including but not limited to any alleged tort, personal injury, negligence or other claim; or any federal or state statutory or regulatory claim of any kind; or whether or not there has been a violation of any right or rights granted under State law (collectively "Disputes") . . . the parties agree that such Dispute(s), shall be resolved by arbitration, as provided by the National Arbitration Forum Code of Procedure or other such association.
>
> The parties agree that only one (1) arbitrator is required to resolve any Dispute(s) and the arbitrator shall be selected from a panel having experience and knowledge of the health care industry. The place of arbitration shall be where Facility is located, or, if that is not practical, then as close to Facility as practical. The arbitrator's compensation and administrative fees related to the arbitration shall initially be paid by Facility and if Facility prevails, then the arbitrator may order that Resident/Representative reimburse it for any compensation or administrative fees paid. . . .
>
> The parties acknowledge and agree that, because the services and reimbursement thereof effects a transaction that involves interstatecommerce, the enforcement of this Arbitration Agreement shall be governed by the Federal Arbitration Act (Title 9 of the United States Code), notwithstanding any contrary provision of this Agreement or contrary state law.

Doc. #21-4.

Plaintiff alleges that as a result of THI negligence, Elsie Adair fell on July 30, 2010, fracturing her right humerus and pelvis. On August 3, 2010, Adair died as a result of the injuries she sustained in the fall.

On June 28, 2012, plaintiff filed this action against THI, seeking damages for negligence and wrongful death. THI filed an answer which raised the arbitration agreement as an affirmative defense. Plaintiff has declined THI's request to voluntarily submit to arbitration. THI seeks an

order compelling plaintiff to arbitrate the claims and staying this case pending arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.

## **Legal Standard**

The FAA provides that a written agreement to arbitrate disputes arising out of a contract involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA authorizes a federal district court to compel arbitration when it would have jurisdiction over a suit on the underlying dispute. See generally Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-27 (1983) (discussing scope and operation of FAA). Section 3 of the FAA obliges courts to stay litigation on matters that the parties have agreed to arbitrate. 9 U.S.C. § 3. The purpose of the Act is "to place an arbitration agreement upon the same footing as other contracts and to overturn the judiciary's longstanding refusal to enforce agreements to arbitrate." Hill v. Ricoh Ams. Corp., 603 F.3d 766, 771 (10th Cir. 2010) (citing Glass v. Kidder Peabody & Co., Inc., 114 F.3d 446, 451 (4th Cir. 1997)). The FAA is a "congressional declaration of a liberal federal policy favoring arbitration agreements." Moses H. Cone, 460 U.S. at 24.

Despite its liberal policy, the FAA "does not require parties to arbitrate when they have not agreed to do so." Volt Info. Scis., Inc. v. Bd. of Trs., 489 U.S. 468, 478 (1989). Rather, courts must enforce agreements to arbitrate, like other contracts, in accordance with their terms. Id. (enforcing arbitration agreement according to its terms gives effect to contractual rights and expectations of parties, without doing violence to policies behind FAA). Before the FAA can be invoked, a court must determine whether the parties reached an agreement to arbitrate. Avedon Eng'g, Inc. v. Seatex, 126 F.3d 1279, 1287 (10th Cir. 1997).

Interpretation of arbitration agreements is generally a matter of state law, and as with any other contract, the parties' intentions control. Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp., 559 U.S. 662, __, 130 S.Ct. 1758, 1773 (2010). The Court looks to state law principles of contract formation to tell whether an agreement to arbitrate has been reached. Avedon, 126 F.3d at 1287. The party seeking judicial enforcement of an arbitration agreement bears the burden of persuasion. THI of N. M. v. Patton, No. 11-537 (LH/CG), 2012 WL 112216, at *6 (D. N.M. Jan. 3, 2012).

Here, the parties formed the contract in Kansas and therefore Kansas law applies. See Bettis v. Hall, 852 F. Supp.2d 1325, 1334 (D. Kan. 2012) (federal court sitting in diversity applies forum's choice of law rules; under Kansas law, court applies law of state where contract made). Under Kansas law, the primary rule for interpreting contracts is to determine the parties' intent from the language of the written agreement. Anderson v. Dillard's, Inc., 283 Kan. 432, 436, 153 P.3d 550, 554 (2007). When interpreting the language of the agreement, the court should construe and consider the entire instrument "from its four corners." Johnson Cnty. Bank v. Ross, 28 Kan. App.2d 8, 10, 13 P.3d 351, 353 (2000). If the terms of the written agreement are clear, the court need not look any further. Anderson, 153 P.3d at 554.

## **Analysis**

THI seeks an order compelling plaintiff to arbitrate the claims and staying this case pending arbitration under Section 4 of the FAA. See 9 U.S.C. § 4. Plaintiff opposes the motion, asserting that the Arbitration Agreement is not enforceable.[1]

The Arbitration Agreement provides that disputes relating to "any alleged tort, personal

---

[1] Plaintiff does not dispute that all claims fall within the scope of arbitrable claims, and that the transaction involves interstate commerce.

injury [or] negligence . . . shall be resolved by arbitration, as provided by the National Arbitration Forum Code of Procedure or other such association." Doc. #21-4. Plaintiff notes that the National Arbitration Forum ("NAF") has discontinued administration of consumer arbitrations. Doc. #22-2 (NAF website, 2011) ("The Forum currently is not accepting consumer arbitrations"); Carr v. Gateway, 944 N.E.2d 327, 331 (Ill. 2011). Plaintiff argues that arbitration before the NAF is integral to the Agreement, and that its unavailability renders the Agreement unenforceable.

In support of this argument, plaintiff cites cases in which courts declined to enforce arbitration agreements that named NAF as the exclusive arbitrator and/or that provided for arbitration under NAF Rules of Procedure. See Plaintiff's Brief, Doc. #22 at 3-5 (citing, inter alia, Rivera v. Am. Gen. Fin. Servs., Inc., 259 P.3d 803 (2011); Covenant Health & Rehab. v. Estate of Moulds, 14 So.3d 695 (Miss. 2009). Plaintiff also points out that the Honorable Julie A. Robinson of this Court has ruled that an agreement which identified the NAF as the exclusive arbitrator was not enforceable. See Klima v. Evangelical Lutheran Good Samaritan Soc'y, No.10-cv-1390-JAR/JPO, 2011 WL 5412216, at *6 (D. Kan. Nov. 8, 2011) (withdrawn after appeal based on stipulation of parties). THI responds that Klima and the other cases which plaintiff cites are distinguishable because here the Arbitration Agreement does not provide that the parties must arbitrate through NAF or that they must use NAF Rules of Procedure. See, e.g., THI of N. M. v. Lovato, 848 F. Supp.2d 1309 (D. N.M. 2012). The Court agrees.

In Klima, the arbitration agreement provided that any arbitration "shall be conducted . . . in accordance with the National Arbitration Forum ("NAF") Code of Procedures for Arbitration," and that the party requesting arbitration "will be required to pay a filing fee to NAF." Klima, 2011 WL 5412216, at *3. Plaintiff contended that the arbitration agreement provided for arbitration only by

-5-

NAF and that because NAF no longer conducts consumer arbitration, the agreement was unenforceable. Defendant argued that the unavailability of NAF did not invalidate the entire arbitration agreement because Section 5 of the FAA authorizes a court to select a substitute arbitrator. See id. at *2 (citing 9 U.S.C § 5) (if agreement provides for method of naming or appointing arbitrator, such method shall be followed; but if there is "lapse" in naming of arbitrator, court shall designate and appoint arbitrator).

Judge Robinson noted that courts disagree on the proper application of Section 5 when the arbitration agreement names an arbitrator. Klima, 2011 WL 5412216, at *3 (citing Rivera, 259 P.2d at 811-15) (collecting cases); *compare* In re Salomon Inc. S'holders' Derivative Litig., 68 F.3d 554, 560–61 (2d Cir. 1995) (refusing to apply Section 5 to replace named but unavailable arbitrator; Section 5 only applies when parties fail to name arbitrator from outset) *with* Ranzy v. Tijerina, 393 F. App'x 174, 175-76 (5th Cir. 2010) (using Section 5 to appoint arbitrator when named arbitrator fails; unavailability of named arbitrator creates "lapse in the naming of an arbitrator," so that Section 5 applies); Reddam v. KPMG LLP, 457 F.3d 1054, 1060-61 (9th Cir. 2006) (same), *abrogated on other grounds as recognized by* Atl. Nat'l Trust LLC v. Mt. Hawley Ins. Co., 621 F.3d 931, 940 (9th Cir. 2010); Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1222 (11th Cir. 2000) (same). Judge Robinson further noted that even courts using a liberal application hold that Section 5 applies "only if the selection of the specific arbitral forum is an ancillary logistical concern." Klima, 2011 WL 5412216, at *3. Thus, if the specified arbitrator is "integral to the arbitration agreement, such that the parties would not have selected arbitration if the arbitral forum was unavailable, the courts will not use [Section 5] to circumvent the parties' intent." Id. (citing Reddam, 457 F.3d at 1061; Brown, 211 F.3d at 1222; Rivera, 259 P.2d at 812).

In Klima, recognizing that the Tenth Circuit has not addressed this issue, Judge Robinson adopted the liberal approach taken by the Fifth, Ninth and Eleventh Circuits because it is consistent with both the purpose behind the FAA and general principles of contract law: it treats arbitration agreements as contracts and looks to the parties' intent. Judge Robinson found that the parties before her intended to use NAF as the exclusive arbitrator, reasoning as follows:

> Defendant's form arbitration agreement names the NAF specifically and exclusively throughout the agreement. The agreement, for example, states: "Any arbitration . . . shall be conducted . . . in accordance with the National Arbitration Forum ("NAF") Code of Procedure for Arbitration." The agreement further states that "any person requesting arbitration will be required to pay a filing fee to NAF. . . ." The agreement also provides the NAF's full contact information for any party that would like more information on how the arbitration would be conducted. . . . Finally, the agreement makes no provision for selecting any other arbitrator besides the NAF. Taken together, these provisions show that the parties intended to select the NAF as the exclusive arbitrator.

Klima, 2011 WL 5412216, at *3.[2] Because the selection of NAF as exclusive arbitrator was integral to the agreement to arbitrate, Judge Robinson found that she could not appoint a substitute arbitrator

---

[2] In Klima, Judge Robinson stated that the rules designated in the agreement confirmed the parties intent to use NAF exclusively. Klima, 2011 WL 5412216, at *4. The NAF Code of Procedure states that it is "incorporated by reference into every Arbitration Agreement" and that any arbitration using its rules and procedures "shall be administered only by [NAF] or by any entity or individual providing administrative services by agreement with the [NAF]." Id. (citing Rivera, 259 P.3d at 814). Judge Robinson found that because the rules were restricted for use only by NAF or entities and individuals providing arbitral services by agreement with NAF, and the parties explicitly selected the NAF Code of Procedure, they exclusively selected NAF to administer those procedures. Klima, 2011 WL 5412216, at *4. Judge Robinson also pointed out that in several places, the agreement states that disputes "shall be settled exclusively by binding arbitration." Id. Each time it made this statement, the agreement added, in the same sentence, that arbitration would be conducted "as set forth in Section C. below." Section C of the agreement explained that the parties did not have to agree to arbitration, but once they agreed on arbitration, the specific process of arbitration was mandatory: "If, however, the Resident agrees to arbitrate disputes by signing this Admission Agreement, then the arbitration will be conducted as follows." Id. The agreement went on to explain the arbitration process conducted by NAF. Judge Robinson reasoned that this language revealed an intent that if arbitration was to occur, it must proceed through NAF.

and she therefore overruled defendant's demand for arbitration. Id. at *6.

In contrast to the agreement in Klima and many of the other cases on which plaintiffs rely, the Arbitration Agreement in this case does not require that arbitration be conducted under the NAF Code of Procedure. Rather, the Agreement states that the parties agree to resolve any dispute "by arbitration, as provided by the National Arbitration Forum Code of Procedure *or other such association*." Doc. #21-4 (emphasis added). Further, while the arbitration agreement in Klima required that a party requesting arbitration pay NAF a filing fee to begin the process, see 2011 WL 5412216, at *3, the Arbitration Agreement in this case provides that THI pay the initial arbitration fees, subject to an arbitrator's order for reimbursement, see Doc. #21-4. Moreover, the court in Klima determined that the parties intended NAF to be the exclusive arbitrator because the arbitration agreement exclusively named NAF throughout the agreement. By contrast, the Arbitration Agreement in this case refers to NAF only once, and provides for one arbitrator who "shall be selected from a panel having experience and knowledge of the health care industry." See Doc. #21-4.

This case is on all fours with the facts of THI of New Mexico v. Lovato, in which the district court found that NAF's unavailability did not render an arbitration agreement unenforceable. In Lovato, as here, the arbitration agreement provided that disputes "shall be resolved by arbitration, as provided by the National Arbitration Forum Code of Procedure or other such association." Lovato, 848 F. Supp.2d at 1324. Further, as here, the arbitration agreement in Lovato provided that only one arbitrator is required to resolve any dispute between the parties, and that "the arbitrator shall be selected from a panel having experience and knowledge of the health care industry." Id. The Court agrees with Lovato that the language of the Arbitration Agreement permits use of an

arbitration provider other than NAF and application of the rules and procedures of an association other than NAF.  For this reason, as a matter of contract interpretation, arbitration before NAF is not integral to the Arbitration Agreement, "but rather is merely an ancillary logistical concern."  Id.  Accordingly, NAF's unavailability does not render the Arbitration Agreement unenforceable.  Id.; see also Meskill v. GGNSC Stillwater Greeley LLC, 862 F. Supp.2d 966, 974-75 (D. Minn. 2012).

The Court finds that THI has satisfied its burden of establishing an agreement to arbitrate.  The Court further finds that NAF's unavailability is not integral to the Arbitration Agreement.  Under Section 4 of the FAA, the Court therefore compels plaintiff to arbitrate the claims against THI.

**IT IS THEREFORE ORDERED** that Defendant THI of Kansas At Golden Plains, LCC's Motion To Stay Proceedings And Compel Arbitration (Doc. #21) filed November 16, 2012 be and hereby is **SUSTAINED**.

**IT IS FURTHER ORDERED** that the parties shall attempt to jointly select an arbitrator.  If the parties cannot agree on an arbitrator, then on or before March 15, 2013, each party shall propose to the Court a method for the Court to appoint an arbitrator.

**IT IS FURTHER ORDERED** that the parties shall file with the Court a joint status report every 90 days.

Dated this 20th day of February, 2013 at Kansas City, Kansas.

                               s/ Kathryn H. Vratil
                               KATHRYN H. VRATIL
                               United States District Judge